IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

CAROLYN SUE BREWER, Survivor of )
her husband, MITCHELL LEE BREWER, )
deceased, )
 )
      Plaintiff, )
 )
v. ) No. 1: 08-0069
 ) Judge Campbell/Bryant
AMERICAN MEDICAL ALERT CORP. )
d/b/a VOICECARE, a New York Corporation, )
and SECURE WIRELESS, INC., )
 )
      Defendants. )

**MEMORANDUM AND ORDER**

**I. Introduction**

On or about November 9, 2007, Plaintiff Carolyn Sue Brewer, survivor of her husband, Mitchell Lee Brewer, deceased, filed a Complaint in the Circuit Court of Wayne County, Tennessee, against Defendant American Medical Alert Corp., d/b/a Voicecare, a New York corporation. On or about October 22, 2008, Plaintiff amended her Complaint to name Secure Wireless as a Defendant in the case. Defendant Secure Wireless then removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (Docket Entry No. 1). The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332.

The Amended Complaint seeks damages for the wrongful death of the deceased, alleging strangulation and death caused by a personal medical alert activator pendant and adjustable lanyard. Currently pending is Defendant American Medical Corp.'s Motion to Disinter and to

1

Obtain an Autopsy on the Remains of Mitchell Lee Brewer. (Docket Entry No. 18). Plaintiff has responded to Defendant's motion. (Docket Entry No. 32). Defendant has submitted a reply memorandum to Plaintiff's response in opposition to the motion. (Docket Entry No. 35). Defendant has amended its motion to add Fed. R. Civ. P. 26 and 35 as additional procedural grounds for this Court to grant its motion. (Docket Entry No. 36). Subsequently, Defendant Secure Wireless also submitted a Motion to Disinter and to Obtain an Autopsy of the decedent. (Docket Entry No. 40), to which Plaintiff has responded (Docket Entry Nos. 44, 45). Upon consideration of these papers, and for the reasons given below, the Magistrate Judge hereby DENIES Defendants' motions to disinter and obtain an autopsy.

## II. Factual Background

This is a products liability action. American Medical Alert Corp. *d/b/a* Voicecare (hereinafter "AMAC") manufactures and markets a VoiceCare Personal Response System (hereinafter "VoiceCare") composed of a two-way voice console and a personal activator worn around the neck by a lanyard. Secure Wireless, Inc. (hereinafter "Secure Wireless") manufactures the alarm button and distributes it attached to a nylon cord that is hung around the neck. Plaintiffs allege that on November 13, 2006, Mitchell Lee Brewer, the deceased, was strangled to death by his VoiceCare nylon lanyard. (Docket Entry No. 1, Am. Compl, at ¶¶ 48-52 ).

At the time of the accident, Mr. Brewer used a motorized wheelchair because he was physically disabled by a stroke which paralyzed the left side of his body. *Id.* at ¶¶ 21-22. Plaintiff alleges that she returned from work early in the morning on the day of the accident and found her husband hanging from his motorized chair with the VoiceCare nylon lanyard wrapped around his

neck. Plaintiff was not wearing the seatbelt to his wheelchair. (Docket Entry No. 40, Depo. of C. Brewer, at 109-110). At the time of his death, Mr. Brewer was alone and there were no witnesses. Plaintiff alleges that the lanyard cord caught on the control knob attached to the right arm of the wheelchair as Mr. Brewer fell. *Id.* at ¶¶ 49-50.

## II. Analysis

### A. Standard of Review

It is well settled that "[t]he quiet of the grave, the repose of the dead, are not lightly to be disturbed. Good and substantial reasons must be shown before disinterment is sanctioned." *Kusky v. Laderbush*, 74 A.2d 546, 547 (N.H.1950) (citing *Currier v. Woodlawn Cemetery*, 90 N.E.2d 18, 19 (N.Y. 1949)). However, "the right to have a dead body remain unmolested is not an absolute one; it must yield where it conflicts with the public good or where the demands of justice require such subordination." *Kusky*, 74 A.2d. at 547 (citing *Silvia v. Helger*, 67 A.2d 28 (R.I. 1949)). In this instance, the Defendant does not have an express contractual or statutory right, as seen in many insurance and worker's compensation cases, to request an autopsy. This case is a wrongful death, product liability action that lies outside the workplace and insurance arenas. As such, Defendants have moved pursuant to Fed. R. Civ. P. 35(a) to disinter and obtain an autopsy on the remains of the decedent. Fed. R. Civ. P. 35(a)(1) provides:

> The court where the action is pending may order a party whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

Rule 35 further provides that the order "may be made only on motion for good cause" and "must specify the time, place, manner, conditions, and scope of the examination, as well as the person

3

or persons who will perform it." Fed. R. Civ. P. 35(a)(2).

In determining the construction of Rule 35, the fundamental premise is "that the deposition-discovery rules are to be accorded a broad and liberal treatment." *Schlagenhauf v. Holder*, 379 U.S. 104, 241 (1964) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Federal district courts have found that upon a "proper showing Rule 35(a) permits the court to order an autopsy." *Belkow v. Celotex Corp.*, 1989 WL 56976 (N.D. Ill. May 19, 1989); *In re Certain Asbestos Cases*, 112 F.R.D. 427, 434 (N.D. Tex. 1986) (holding that "Rule 35(a) permits the court to require a party to produce a decedent who is under the party's custody and control"); *Plaisted v. Geisinger Med. Ctr.*, 210 F.R.D. 539, 541 (M.D. Pa. 2002) (citing *In re Certain Asbestos Cases*, 113 F.R.D. 612, 614 (N.D. Tex. 1986). Plaintiff does not disagree with these authorities allowing autopsies pursuant to Rule 35, but argues that where disinterment is first required, a heightened standard not contemplated by the rule is applicable. (Docket Entry No. 45 at 3-6) While the undersigned finds that Rule 35 remains an appropriate procedural vehicle where disinterment is sought, particularly inasmuch as the need for disinterment is implied in most autopsy requests made after the decedent has died,[1] the weight of authority on this subject requires that such movants not only satisfy the rule's requirements of showing good cause and the controverted nature of the decedent's physical condition at the time of death, but also that they demonstrate the necessity of such relief, as compared to other medical alternatives, "and

---

[1] *See* James T. R. Jones, *Evidentiary Autopsies*, 61 U. Colo. L. Rev. 567 (1990), for an excellent exposition of authorities on the topic, including support for the author's conclusions that disinterment is implied where autopsies are requested; that either Federal Rule 34 or 35 may be utilized in seeking an evidentiary autopsy; that delay in seeking such relief is not problematic per se, but only to the extent that it may reduce the probative value of the autopsy due to decomposition of the remains; and, that the test articulated in *Stephens v. National Gypsum Co.*, *infra*, should control in most evidentiary autopsy cases.

4

upon a strong showing that the examination or autopsy will establish the facts sought." *Stephens v. National Gypsum Co.*, 685 F.Supp. 847, 847-48 (M.D. Ga. 1988). *Cf. Dennis v. State*, 279 S.W.2d 512, 515-16 (Tenn. 1955) (recognizing that, "in the absence of a statute the court has always had the discretion and power to order an exhumation and autopsy where the necessity for same sufficiently is made to appear."); *cf. also Deneen v. New England Mut. Life Ins. Co.*, 615 F.2d 396, 398 (6th Cir. 1980) (requiring that post-burial autopsy be shown to be "reasonably certain" to reveal facts "which could not otherwise be discovered.").

B. Cause of Death in Controversy

Plaintiff's Complaint seeks recovery for the wrongful death of Mr. Brewer, allegedly caused by the defective design of the VoiceCare. Therefore, the cause of Mr. Brewer's death is of central importance to the outcome of this case. Plaintiffs allege in their Amended Complaint that "Mr. Brewer's cause of death is strangulation." (Am. Compl. at ¶ 52). Both Defendants have denied this allegation in their answers. (Docket Entry No. 12 at 14; Docket Entry No. 17 at ¶ 52). Defendant Secure Wireless claims that the accident was caused "by a person or persons other than Defendant over whom Defendant had neither control nor the right to control, or resulted from some intervening and superseding cause, phenomenon or misadventure beyond the control of Defendant and for which Defendant is not liable." (Docket Entry No. 12 at 14). Competing affidavits have also been submitted. Plaintiff presents the Death Certificate and sworn affidavit of Dr. Joe. I. Hall, the Wayne County Medical Examiner, who opines that Mr. Brewer's cause of death was accidental ligature strangulation. (Docket Entry No. 31, Sworn Statement of Dr. Hall, at 8). Plaintiff also presents sworn affidavits of Waynesboro police officers Thomas Moser and Amy Moore, who arrived at the scene, and Mrs. Brewer, all of whom claim that Mr. Brewer's

5

cause of death was strangulation. (Docket Entry No. 31, Sworn Statement of Lt. Moser, at 6; Sworn Statement of Officer Moore, at 8; Sworn Statement of Mrs. Brewer, at 45-48).

Defendants present the affidavit of Dr. Amy McMaster, a board certified pathologist and Deputy Chief Medical Examiner for the Metropolitan/Davidson Country Medical Examiner's Office. (Docket Entry No. 40, McMaster Aff., at ¶ 2). Dr. McMaster has reviewed Mr. Brewer's medical records, the Report of the Wayne County Medical Examiner, Waynesboro Police Report, Wayne County EMS Report, Certificate of Death for Mr. Brewer, and the Sworn Statements of first responders and of Dr. Hall, and has made a telephone call to Dr. Hall. (*See* Docket Entry No. 40, McMaster Depo., at 70-73). Dr. McMaster opines that, after review of all those documents and photographs, she "cannot state to a reasonable degree of medical certainty that Mr. Brewer died from accidental ligature strangulation" and that it is "probabl[e] that [he] terminally collapsed from natural disease and fell forward to come to rest in the position found." (McMaster Aff. at ¶ 6).

It is clear that Mr. Brewer had a number of serious medical conditions including diabetes, chronic obstructive pulmonary disease, a prior history of meningitis, and cardiovascular disease that caused a stroke leaving him paralyzed on his left side. At time of his death, Mr. Brewer was alone. There were no witnesses. There also still seems to be an uncertainty as to exactly why Mr. Brewer fell in the first place. For these reasons, the undersigned finds that Mr. Brewer's cause of death is "in controversy."

C. Good Cause and Urgent Necessity

The "good cause" component of Fed. R. Civ. P. 35 must be proved by the affidavit or deposition of a licensed physician. *See Plaisted*, 210 F.R.D. at 541 (citing *In re Certain Asbestos*

6

Case 1:08-cv-00069   Document 47   Filed 09/15/09   Page 6 of 9 PageID #: 678

*Cases*, 113 F.R.D. at 614). Defendants rely on the deposition testimony and affidavit of Dr. McMaster to show good cause and urgent necessity. To prevail on the issue, Defendants must first prove that an autopsy is the most medically reasonable method, considering the reasonable medical alternatives, for determining the decedent's physical condition at the time of death. *In re Asbestos Cases*, 113 F.R.D at 614. In this instance, it appears an autopsy is the only medical alternative, as Mr. Brewer's remains have been buried for over two years, without ever having been autopsied. Dr. McMaster has even noted that "without an autopsy, [she] cannot state with reasonable medical certainty whether Mr. Brewer died from natural disease or other causes." (McMaster Aff. at ¶ 7; McMaster Depo. at 128).

The movant must also make a "strong showing" that an autopsy will "establish the facts sought." *Stephens*, 685 F.Supp. at 848; *Life Investors Ins. Co. v. Heline*, 285 N.W.2d 31, 33 (Iowa 1979); *see also Petition of Sheffield Farms Co.*, 126 A.2d 886, 891 (N.J. 1928) (stating that "good cause and urgent necessity are to be gauged and measured by the reasonable probability of the cause of death being capable of establishment by the examination and autopsy"). The court must be convinced that an autopsy will produce reliable data that is "clearly superior" to what is already available. *Belkow*, 1989 WL 56976 at *2. While Dr. McMaster has stated that an autopsy is "necessary to determine whether Mr. Brewer died from strangulation or from natural causes," she has not made the strong showing - and Defendants have produced no other evidence besides her affidavit and deposition - that an autopsy would establish the facts sought. (McMaster Aff. at ¶ 8). Defendant Secure Wireless states in its memorandum in support of its motion to disinter that Dr. McMaster "testified that embalming does not affect the condition of the vital organs including the heart, brain, lungs, kidney, or skin." (Docket Entry

7

No. 40 at 8; McMaster Depo. at 31). However, Dr. McMaster noted in her deposition that her "answers are qualified with the degree of embalming" performed on the decedent's body. (McMaster Depo. at 31). Furthermore, she testified that the level of decomposition would impact the ability to determine Mr. Brewer's cause of death and that numerous factors would influence the level of decomposition - the temperature of the Brewer's home on the day of the accident, the length of time Mr. Brewer remained at his home after he died, insect activity, the amount of time between the death and embalming, the quality of the embalming, the amount of time Mr. Brewer has been buried, the type of casket he was buried in, the type of vault used, and the type of soil in which he was buried. (McMaster Depo. at 29). Defendants have shown that under the right conditions and with the proper embalming, Mr. Brewer's cause of death might be determined. They do not provide any evidence about these conditions or the embalming process, but instead offer mere conjecture as to the chances that his body was well preserved. Since Mr. Brewer has been dead now for almost 33 months, such evidence is crucial in making a strong showing that an autopsy could establish the cause of Mr. Brewer's death.

In both parties' memoranda, the timeliness of the defendants' motions has been discussed by reference to the typical requirements of insurance contracts and workers' compensation statutes. *See Deneen v. New England Mut. Life Ins. Co.*, 615 F.2d at 398 (citing *McCulloch v. Mutual Life Ins. Co. of New York*, 109 F.2d 866 (4th Cir. 1940)) (stating that moving party's request must be "timely" and "reasonably certain" to "reveal something bearing on the rights of the parties which could not otherwise be discovered"); *Cunningham v. Shelton Sec. Services, Inc.* 958 S.W.2d 338, 341 (Tenn. 1997) (quoting *Robinson v. Nashville Mach. Co.*, 503 S.W.2d 90, 93 (Tenn. 1973)) ("Timeliness requires that the party requesting the autopsy do so within a

8

reasonable length of time after having knowledge of its necessity."). Delay per se, however, should not necessarily be a reason for denying a motion for disinter, but should instead be a factor to consider in determining if probative value can be gained from an autopsy. *Life Investors Ins. Co. v. Heline*, 285 N.W.2d 31, 32 (Iowa 1979). Defendant Secure Wireless has made strong arguments as to the timeliness of its motion, given that Plaintiffs brought them into this suit just eight months ago. However, in *Deneen*, the Sixth Circuit found that defendant's motion to disinter was timely, yet still denied the motion because it was not shown that an autopsy was "reasonably certain" to reveal the decedent's cause of death. *See* 615 F.2d at 398. In light of strong public policy concerns against disinterment, the undersigned finds the speculative nature of Dr. McMaster's testimony inadequate with regard to the embalming process and numerous other conditions that could affect the decomposition of the decedent's body, and therefore finds that Defendants' motions to disinter and perform an autopsy on the decedent should be denied.

## IV.    Conclusion

For the foregoing reasons, Defendants' motions to disinter and perform an autopsy (Docket Entry Nos. 18, 36, 40) are hereby DENIED.

So **ORDERED**.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE

9